O

UNITED  STATES  DISTRICT  COURT

FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

SIM HOFFMAN, et al,                )
                                   )
            Plaintiff(s),          )
                                   )
    v.                             )
                                   )
ZENITH INSURANCE COMPANY, et )
al,                                )
                                   )
            Defendant(s).          )
                                   )
                                   )
                                   )
                                   )
                                   )
                                   )
_____

CASE NO. SACV 10-00355 DOC (ANx)

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFFS' RICO CLAIMS**

Before the Court is Defendants Zenith Insurance Company and Znat Insurance Company (collectively "Zenith")'s Motion for Summary Judgment as to Plaintiffs' RICO Claims (the "Motion") (Docket 22).  After considering the parties' moving, opposing, and replying papers, as well as oral arguments from both sides, the Court GRANTS the Motion.

**I.      Background**

This lawsuit is related to a consolidated lawsuit that is in the process of settling before this Court.  Plaintiffs argue that Defendants conducted the affairs of several enterprises through a pattern of mail fraud, in violation of 18 U.S.C. § 1962(c).  Plaintiffs further allege that

1 Defendants conspired to commit a substantive violation of the Racketeering Influenced and

2 Corrupt Organizations ("RICO") Act in violation of 18 U.S.C. § 1962(d).

3       Plaintiffs include Sim Hoffman, M.D. ("Dr. Hoffman"), an Orange County based

4 physician and radiologist, and a number of business entities that Dr. Hoffman owns or operates.

5 Dr. Hoffman is the medical director of Plaintiff Advanced Professional Imaging Medical Group

6 ("API"), which performs radiological diagnostic services in Buena Park, California.  Declaration

7 of Sim Hoffman, M.D. ("Hoffman Decl."), ¶ 4.  Dr. Hoffman also owns and operates Plaintiff

8 Better Sleeping Medical Center, Inc., which provides "sleep testing" services in Buena Park,

9 California. *Id.*.  Dr. Hoffman is an owner, officer, and/or shareholder of Plaintiff Advanced

10 Medical Support, Inc., which provides interpreter and translation services in support of medical

11 providers in Buena Park, California.  Dr. Hoffman is also the owner, officer, and/or shareholder

12 of Plaintiff Pacific Medical Supplies & Services, Inc., which provides transportation services to

13 medical providers in Buena Park, California.  Dr. Hoffman owns and operates Plaintiff

14 California Psychologist Care, Inc., which provides psychological services in an unspecified

15 region in the state of California.  Dr. Hoffman also owns and operates Plaintiffs Access Plus,

16 Inc., Pacific Neuro Diagnostic Medical Group, Inc., Pacific Care Medical Group, Inc., and

17 Diagnostic Imaging Network Medical Group, Inc., all of which submits bills for reimbursement

18 to insurers on behalf of medical providers in the state of California.

19       Dr. Hoffman, along with the other Plaintiffs, service injured workers covered under

20 workers' compensation insurance policies.  Hoffman Decl. ¶ 3; Complaint, ¶¶ 12-20.  After an

21 injured worker is provided with radiological services by Advanced Professional, sleep tested by

22 Better Sleeping, receives assistance with the English language from Advanced Medical, obtains

23 help with transportation needs from Pacific Medical, or receives psychological care from

24 California Psychologist, the entities bill the injured worker's workers' compensation insurer for

25 services rendered.  The bills are submitted through and by the four entity plaintiffs owned and

26 operated by Dr. Hoffman.  In the event an insurer objects to a bill or otherwise fails to remit

27 timely payment, the medical provider (or the entity that submits the bill on its behalf) files a lien

28 with the Workers Compensation Appeals Board of California (WCAB).

1    Plaintiffs' suit challenges the manner in which Zenith, which sells workers' compensation

2  insurance in California and other states, objected to bills for services purportedly rendered by Dr.

3  Hoffman's entities. Under California law, an insurance provider who objects to a bill must "file

4  a written objection within 60 days from receipt of the bill stating the reasons for the objection.

5  Hoffman Decl.  ¶ 20.  Plaintiffs aver that Zenith committed numerous predicate acts of mail

6  fraud by sending Explanation of Payment ("EOP") letters to Plaintiffs after receiving bills from

7  Plaintiffs.  Motion, at 7.  Plaintiffs allege that Zenith's refusals to pay its bills were not made in

8  good faith; they argue that Zenith's EOP objections and subsequent refusals to make payments

9  were "inadequate" and often "boilerplate."  Plaintiffs' Opposition to Motion for Summary

10  Judgment ("Opposition"), at 7-8.

11    Plaintiffs allege that Zenith's conduct through its EOPs and before the WCAB constitutes

12  a substantive violation of RICO as well as an unlawful conspiracy to violate RICO and that

13  Plaintiffs have been injured in their business or property by reason of Zenith's violations of the

14  RICO statute.  According to Plaintiffs, Zenith has "lull[ed] Plaintiffs into believing" that it

15  intended to resolve its objections to their claims in good faith before the WCAB, only to

16  "abus[e] the process of the WCAB to delay payments and to destroy Plaintiffs' business."

17  Complaint, ¶ 34.  Plaintiffs claim that Zenith has instructed its adjustors to systematically deny

18  Plaintiffs' requests for reimbursement, make disingenuous offers to settle the claims for

19  payment, and exploit the "slow moving" workers' compensation appeals system to essentially

20  litigate Plaintiffs to death.  *See id.*,  ¶¶ 35-37. Plaintiffs also challenge the good faith of

21  Defendants' objections before the WCAB.  They argue that Defendants were "abusing the

22  process" in order to destroy Plaintiffs financially; they point to Zenith's consolidation of all

23  outstanding cases before the WCAB and the subsequent stay imposed on all liens as proof of

24  Zenith's ill will.  Opposition, at 9.

25    Prior to the filing of the instant lawsuit, Zenith filed its own claim for insurance fraud and

26  unfair business practices against many of the Plaintiffs, including Dr. Hoffman, in Orange

27  County Superior Court under California Insurance Code section 1871.7.  Declaration of Dennis

28  Kass ("Kass Decl."), ¶ 2, Exh. A.. Zenith's state court complaint alleges that Dr. Hoffman and

1  his entities have fraudulently sought reimbursement for medical services that were never actually

2  provided and, indeed, could not have been provided since Dr. Hoffman and his entities lacked

3  the technological capability to provide some of the services for which they sought to bill

4  insurers.  Defendants assert that Plaintiffs filed the present case in retaliation for the state court

5  case filed by Zenith.

6  **II.      Legal Standard**

7  Summary judgment is proper if "the pleadings, the discovery and disclosure materials on

8  file, and any affidavits show  that there is no genuine issue as to any material fact and that the

9  movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).

10  The Court must view the facts and draw inferences in the manner most favorable to the

11  non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993 (1962);

12  *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992).  The moving party bears

13  the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it

14  need not disprove the other party's case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256,

15  106 S. Ct. 2505 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S. Ct. 2548 (1986).

16  When the non-moving party bears the burden of proving the claim or defense, the moving party

17  can meet its burden by pointing out that the non-moving party has failed to present any genuine

18  issue of material fact.  *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

19  Once the moving party meets its burden, "an opposing party may not rely merely on

20  allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise

21  provided in this rule–set out specific facts showing a genuine issue for trial.  If the opposing

22  party does not so respond, summary judgment should, if appropriate, be entered against that

23  party."  FED. R. CIV. P. 56(e)(2); *see also Anderson,* 477 U.S. at 248-49.  Furthermore, a party

24  cannot create a genuine issue of material fact simply by making assertions in its legal papers.

25  There must be specific, admissible evidence identifying the basis for the dispute.  *S.A. Empresa*

26  *de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir.

27  1980).  The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will

28  be insufficient; there must be evidence on which the jury could reasonably find for [the opposing

4

1    party].” *Anderson*, 477 U.S. at 252.

2    **III.    Discussion**

3            Plaintiffs bring their RICO claim under 18 U.S.C. § 1964(c), RICO’s private right of

4    action, for Zenith’s alleged violation of 18 U.S.C. § 1962(c).  To establish a violation of

5    substantive RICO, 18 U.S.C. § 1962(c), a plaintiff must prove “‘(1) conduct (2) of an enterprise

6    (3) through a pattern (4) of racketeering activity.’”  *Resolution Trust Corp. v. Keating*, 186 F.3d

7    1110, 1117 (9th Cir. 1999) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S. Ct.

8    3275, 3285 (1985)).  A “pattern of racketeering activity” is established when a plaintiff proves

9    that a defendant committed two or more predicate acts.  18 U.S.C. § 1961(5).  To establish a

10   violation of 18 U.S.C. § 1962(d), which Plaintiffs also allege, they must prove that the

11   Defendants conspired to engage in a RICO violation.  Plaintiffs allege that the prior predicate

12   acts were mail or wire fraud that Defendants committed in objecting to the bills Plaintiffs sent

13   them.  Defendants challenge both whether they committed wire or mail fraud, as well as whether

14   Plaintiffs detrimentally relied upon their actions.

15           Plaintiffs rest much of their defense of their allegations on the arguments that the Court

16   supported in its Order Denying Defendants’ Motion to Dismiss.  *See* August 31, 2010 Order

17   Denying Defendants’ Motion to Dismiss.  In that Order, the Court agreed with Plaintiffs’

18   contentions that, for the purposes of RICO, they did not need to allege that the content of the

19   communications constituting wire or mail fraud was fraudulent, but only that the underlying

20   scheme was fraudulent. *Id.* at 5-6.  The Court also noted that Plaintiffs were not required to

21   allege that there was any reliance based on Zenith’s alleged misrepresentations, though the Court

22   also noted that there can be no RICO injury if no one relied upon the fraudulent scheme.  *Id.* at

23   6.  Plaintiffs appear to assume that the favorable ruling necessarily extends to a denial of

24   Defendants’ Motion for Summary Judgment, *see* Opposition at 12, but they overlook the

25   distinction between a motion to dismiss and a summary judgment analysis.  At this summary

26   judgment stage, Plaintiffs must do more than allege sufficient facts to constitute RICO claims;

27   they must provide adequate evidence to support their already pled allegations and prove the

28   existence of a genuine issue of material fact. *See* FED. R. CIV. P. 56(e)(2).

5

1    No reasonable jury could find a RICO violation based on the minimal evidence Plaintiff

2   has presented in opposition to this Motion.  Defendants's Motion argues that Plaintiffs have

3   failed to prove the requisite acts of mail or wire fraud and  that Plaintiffs' RICO claims fail

4   because Plaintiffs have not shown that anyone detrimentally relied upon those allegedly

5   fraudulent communications.  Defendants argue first that the EOP letters they sent Plaintiffs

6   cannot support a claim for wire or mail fraud because the EOPs were not fraudulent; they were

7   mere expressions of Defendants' opinions, rather than factual statements that could be

8   characterized as fraudulent. Secondly, Defendants contend that there was no detrimental reliance

9   on the letters that were sent only after Plaintiffs provided services.  Because the Court finds that

10  Plaintiffs failed to prove any possibility of detrimental reliance, it need not evaluate whether the

11  contents of the communications were fraudulent.

12    Plaintiffs argue that there is no statutory requirement to prove reliance to establish a claim

13  under the mail fraud or wire fraud statutes.  *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S.

14  639 (2008).  But there is a requirement to show causation: "It is well settled that, to maintain a

15  civil RICO claim predicated on mail [or wire] fraud, a plaintiff must show that the defendants'

16  alleged misconduct proximately caused the injury." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 941

17  (9th Cir. 2006) (quoting *Poulos v. Caesars World*, Inc., 379 F.3d 654, 664 (9th Cir.2004) (citing

18  *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532

19  (1992))). Furthermore, Plaintiffs *have* alleged that there was detrimental reliance at issue, and

20  therefore have undertaken the burden of proving an injury resulting from someone detrimentally

21  relying upon Defendants' conduct.  *See* August 31, 2010 Order Denying Defendants' Motion to

22  Dismiss, at 6 ("Plaintiffs *do* allege they relied on Zenith's alleged representation that its

23  objections and non-payment of Plaintiffs' bills was undertaken in good faith and with a view to

24  resolving the objections and eventually remitting payments to Plaintiffs.").  This differs from

25  *Bridge*, where plaintiffs did not allege detrimental reliance. 553 U.S. at 648 (noting that

26  "respondents do not even allege that they relied on petitioners' false attestations").

27    As this Court previously noted, Plaintiffs could allege an injury under RICO "for any

28  injury caused by their reliance on Zenith's alleged misrepresentations about its good faith."

6

1  August 31, 2010 Order Denying Defendants' Motion to Dismiss, at 6. At this summary judgment

2  stage, Plaintiffs must now provide evidence "from which a jury might return a verdict in [their]

3  favor." *Anderson*, 477 U.S. at 252. They have failed to present evidence suggesting any

4  reasonable possibly of detrimental reliance based on Zenith's representations to it.

5          Plaintiffs' evidence demonstrating the existence of detrimental reliance falls woefully

6  short of proving that a triable issue exists.  The Declaration of Dr. Hoffman, the main Plaintiff in

7  this case, states that he "relied on Zenith's representations that they would litigate . . . in good

8  faith."  Hoffman Decl., ¶ 24.  That undeniably self-serving declaration lacks the sufficient

9  elaboration or evidentiary support needed to create a triable issue of material fact regarding

10  detrimental reliance.  It is not clear what Plaintiffs would have done differently, and, more

11  importantly, how Dr. Hoffman's subjective belief that Defendants acted in good faith led to any

12  detriment.  The minimal supporting evidence offered by Plaintiffs only bolsters the idea that all

13  that Plaintiffs relied upon was their own decision to assume that Defendants acted in good faith.

14  Like Dr. Hoffman's, the declaration of Martin Renetsky also shows *not* that Defendants

15  represented that they acted in good faith, but merely that, because many of the objection letters

16  were "boilerplate," Plaintiffs *assumed* Defendants acted in good faith.  *See* Declaration of Martin

17  Renetsky ("Renetsky Decl."), ¶ 12.  Renetsky noted that "[u]pon receipt of those letters, my

18  office *presumed* that despite the objection letters, [Zenith] would continue to attempt to resolve

19  the claims . . . ."  *Id.* (emphasis added).

20          Nonetheless, Dr. Hoffman's declaration insists  that "[o]n that basis [of believing Zenith

21  to have good faith], I continued to treat injured workers in cases involving Zenith" and

22  "Plaintiffs continued to provide diagnostic examinations to injured workers who's [sic]

23  employers were insured by Zenith." *Id.* at ¶¶ 24, 26.  This vague description of reliance is far too

24  attenuated; Plaintiffs admit that Defendants did not always object to every bill, so they cannot tie

25  the service of one patient to an objection they received from another.  *See* Plaintiffs' Separate

26  Statement of Genuine Issues, ¶ 3.  Plaintiffs respond that this is a case of "lulling" and not about

27  a reliance on any individual objection, yet, again, the facts show that Plaintiffs were not lulled by

28  Defendants' objections, but allowed their own interpretation of the implications of those

7

1  objections to "lull" them.

2      However, as described above, even assuming that such an attenuated understanding of

3  reliance suffices, Dr. Hoffman's and Renetsky's declaration about their office's subjective

4  understanding nonetheless falls short of establishing that Defendants actually did mislead

5  Plaintiffs about their good faith intent in objecting to the bills.  All that Dr. Hoffman relied upon

6  was his own *decision* to assume good faith on the part of Defendants–there were no objective,

7  affirmative representations of such by Defendants, and so any reliance resulted from Dr.

8  Hoffman's and Renetsky's assumptions.  The closest Plaintiffs get to showing that there was any

9  affirmative assurance of good faith on the part of Defendants regarding the EOPs is Renetsky's

10 statement that "my office was led to believe that [Zenith] would make reasonable payments on

11 claims . . . ."  Renetsky Decl. ¶ 13.  Plaintiffs do not supply evidence indicating what exactly

12 Defendants assured them or any specific promises made by Defendants that led to their

13 detrimental reliance.[1]  Instead, there is only evidence to support the conclusion that Plaintiffs

14 simply made a presumption that Defendants would act in good faith, and then decided to rely

15 upon their assumptions.

16     Perhaps more illogically, Plaintiffs also insist that they detrimentally relied on

17 characterizations of their own behavior.  Defendants' EOPs were a response to Plaintiffs' own

18 provided services.  If Defendants did, indeed, mischaracterize or fraudulently object to those

19 services, Plaintiffs would, of course, know that the characterizations were false *because they*

20 *were the ones who had proffered the services.*  They could not be deceived by representations

21 about themselves. The same logic extends to Defendants' objections before the WCAB;

22 Defendants only made statements at the WCAB following Plaintiffs' rendering of services.

23

24     [1]The Renetsky declaration does assert that there were "assurances" given by
25 Defendants regarding the liens, and that "in [his] view, the sole purpose of the
   consolidation request [was] to further delay any payments . . . ."  Renetsky Decl. ¶ 17.
26 But Defendants counter that the consolidation process they have instituted is intended to
   speed up the process, so is therefore not inconsistent with these assurances.  Furthermore,
27 once again, Plaintiffs' evidence reveals a detrimental reliance only on their interpretations
28 of Defendants representations.

8

1   There are also no allegations that choosing to decline treating those patients would have led to

2   any detriment to Plaintiffs. A reasonable jury could not find that Defendants' EOPs created any

3   sort of detrimental reliance.

4          Because the Court finds no possibility of detrimental reliance, Plaintiffs cannot prove

5   their RICO allegations or any conspiracy to commit a RICO violation.  There remains no other

6   issue of material fact for a jury to resolve if there was no detrimental reliance on Defendants'

7   actions.

8          **IV.     Disposition**

9          For the reasons stated above, the Court finds that there are no triable issues of material

10  fact remaining in this case.  No reasonable jury could find Defendants liable for RICO or for

11  conspiracy to commit a RICO violation.

12         Accordingly, the Court GRANTS summary judgment in favor of Defendants.

13

14  IT IS SO ORDERED.

15

16  DATED: FEBRUARY 10, 2011

17

18  _____
                 DAVID O. CARTER
19             United States District Judge

20

21

22

23

24

25

26

27

28