# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA



## CIVIL MINUTES - GENERAL

Case No. SACV 10-0355 DOC (ANx)                                    Date: May 12, 2011
Title: SIM HOFFMAN, ET AL. v. ZENITH INSURANCE COMPANY, ET AL.

---

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

|   Julie Barrera   |   Not Present   |
|:---:|:---:|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                   NONE PRESENT

---

PROCEEDING (IN CHAMBERS): ORDER DENYING PLAINTIFF'S MOTION TO ALTER OR AMEND THE JUDGMENT (FRCP 59(e)) AND DENYING MOTION FOR RELIEF FROM JUDGMENT (FRCP 60(b))

Before the Court are two, nearly-identical Motions filed by Plaintiff Sim Hoffman, M.D. ("Plaintiff") in the above-captioned case. The first is a Motion to Alter or Amend the Judgment (FRCP 59(e)) ("Motion to Amend") (Docket 43 and 47) and the second is a Motion for Relief from Judgment (FRCP 60(b)) ("Motion for Relief") (Docket 62). The Court has considered the moving, opposing, and replying papers and DENIES both Motions.

**I.      Background**

This case was closed on February 15, 2011 (Docket 38) following the summary judgment hearing on February 7, 2011 and the Court's Order Granting Defendants' Motion for Summary Judgment on February 10, 2011 (Docket 37). In that Order the Court held that "[n]o reasonable jury could find a RICO violation based on the minimal evidence Plaintiff has presented . . . ." Order Granting Defendants' Motion for Summary Judgment ("MSJ Order").

Plaintiffs, who service injured workers under workers' compensation insurance policies, had alleged that Defendant Zenith Insurance Company ("Zenith" or "Defendant") objected in bad faith to bills for services purportedly rendered by Plaintiffs. Plaintiffs argued that Zenith committed numerous predicate acts of mail fraud by sending Explanation of Payment letters to Plaintiffs after receiving their bills, and then refused to make payments as part of a conspiracy to destroy Plaintiffs'

business. They further averred that Zenith had instructed its adjustors to systematically deny requests for reimbursement, and exploited the workers' compensation appeals system to litigate Plaintiff to death and destroy Plaintiff financially. Plaintiffs' case was filed following Zenith's state court action accusing Plaintiffs of fraudulently seeking reimbursement for medical services that were never actually provided.

The MSJ Order found a complete lack of causation present; Plaintiffs could not show that Defendant's actions led to any detriment. Instead, "the minimal supporting evidence offered by Plaintiffs only bolster[ed] the idea that all that Plaintiffs relied upon was their own decision to assume that Defendants acted in good faith." The declarations offered by Plaintiffs "[fell] short of establishing that Defendants actually did mislead Plaintiffs about their good faith intent in objecting to the bills . . . there were no objective, affirmative representations of such by Defendants . . . ." Furthermore, "Plaintiffs [did] not apply evidence indicating what exactly Defendants assured them or any specific promises made by Defendants that led to their detrimental reliance."

Despite the Court's granting of summary judgment and formal closure of the case, Plaintiff filed its Motion to Amend on March 14, 2011 without meeting and conferring with Defendants. Before the Court had issued its ruling on that Motion, however, Plaintiffs filed what they admit is essentially the same motion, the Motion for Relief, in the event that the Court refused to consider the merits of the Motion to Amend because of the failure to meet and confer. Motion for Relief, 2. Thus, because Plaintiffs concede that the Motion for Relief is essentially a duplicative motion, the Court considers the two motions together.[1]

## II. Legal Standard

### A. Rule 59(e)

Under Federal Rule of Civil Procedure 59(e), reconsideration is appropriate if the district court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah County v. AcandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). A party must file to alter or amend a judgment no later than 28 days after the entry of the judgment. Fed. R. Civ. Pro. 59(e).

---

[1] The Court notes its refusal to consider waived any arguments not raised in Defendants' Opposition to the second motion. Plaintiffs illogically argue, without citation to any authority, that any arguments that Defendant raised in its Opposition to the Rule 59(e) Motion, but that it did not raise again in its Opposition to the Motion for Relief have been "conceded" as to a "lack of merit." Reply to Motion for Relief, 2. The Court wholly rejects this unsupported argument, as Defendants are not required to reiterate every argument again.

For evidence to classify as "newly discovered" it must "be discovered after the judgment" and "could not be discovered earlier through due diligence" and must be "of such a magnitude that had the court known of it earlier, the outcome would like have been different." *Dixon v. Wallowa County*, 336 F.3d 1013, 1022 n.17 (9th Cir. 2003) (affirming a district court's denial of a Rule 59(e) motion because it was not shown that the "newly discovered evidence" could not have been discovered earlier through due diligence).

### B. Rule 60(b)

A court may set aside a judgment where the moving party establishes a proper ground for relief within the applicable time period. Federal Rule of Civil Procedure 60(b) lists the following as grounds for setting aside a final judgment:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b); *see also School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993), *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir. 1991).

In addition to the grounds for relief set forth in clauses (1) through (5), Rule 60(b)(6) allows the Court to relieve a party from final judgment or order for "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(6). The Supreme Court has interpreted this catch-all provision narrowly, requiring the party to show "extraordinary circumstances suggesting that the party was faultless in the delay." *Pioneer Inv. Servs. v. Brunswick Assocs.*, 507 U.S. 380, 393, 113 S. Ct. 1489 (1993) (internal quotations omitted). The Court explained that "[i]f a party is partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable." *Id.* Thus, although there is no time limitation for brining a motion under Rule 60(b)(6), the standard for setting aside a judgement under this provision is much higher than that for Rule 60(b)(1). The moving party cannot show that he merely neglected to comply with court procedures; rather, he must demonstrate that he was incapable of complying with such procedures. *See id.*

### III. Discussion

#### A. Summary of Purported New Evidence

Plaintiffs bring their motion because of what they call "recently obtained newly discovered, direct evidence of fraudulent, oppressive racketeering activities by [Zenith]." Motion to Amend, 1. In short, Plaintiffs argue that they have talked to Bernyce Peplowski ("Peplowski"), a former Chief Medical Officer of Zenith. *Id.* at 2. They insist that they interviewed Peplowski in December 2010, and that she provided a "shocking" account of the racketeering activities of Zenith. *Id.* According to Plaintiffs, they sought to depose her in preparation for their opposing papers to Defendant's summary judgment motion, but Peplowski then denied that the interview session had occurred, as well as the substance of that interview. *Id.* Though Plaintiffs did not ever raise this issue with the Court, they nonetheless insist that they were unable to garner the relevant facts to oppose the summary judgment motion until recently, when they obtained an additional declaration.

The purported significance of Peplowski's testimony stems from her "hair-raising tale" of Zenith's policy not to pay proper claims and to litigate cases rather than provide proper payments. Sid Hoffman Declaration ("Hoffman Decl."), ¶ 8. Peplowski allegedly also informed Plaintiffs that Zenith maintained a list of providers that it tried not to pay, which included Plaintiffs. *Id.* Nonetheless, Peplowski allegedly refused to sign a declaration for Plaintiffs, but told them she would be responsive to a subpoena. She also allegedly informed Plaintiffs' counsel that she had been represented by the law firm Arent Fox LLP in connection with her severance from Zenith and employment claims against them. Declaration of Benjamin Fenton ("Fenton Decl."), ¶ 16. According to Plaintiffs, their counsel, Benjamin Fenton, communicated with the firm the next day. *Id.* Plaintiffs' counsel claim to have prepared a summary of that meeting the next day. *Id.* at ¶ 15. That summary states that Peplowski told counsel that Zenith's Vice President of Claims "determined that the best way to maximize profits was by refusing to pay on undisputed claims and using the workers comp process to delay payments and put providers out of business" . . . and that Peplowski frequently received admonishment "because she would not deny standard payments to providers." Fenton Decl. Plaintiffs then claim that they served a subpoena on Peplowski on December 22, 2010 and then negotiated with Peplowski's counsel to set a deposition for January 17, 2011, which was also the day that Plaintiffs' Opposition was due to Defendants' Motion for Summary Judgment. At that deposition, Peplowski appeared with Zenith's attorneys, Mannin & Kass. According to Plaintiffs, for the first time, Pelowski denied having ever met with Plaintiffs' counsel. Fenton Decl., ¶ 21. Plaintiffs insist that Peplowski's responses to questions in the deposition were dishonest.

Defendant's counsel raised several objections at the deposition, including the fact that Plaintiffs' counsel allegedly met with Peplowski when they knew she was represented by counsel. Peplowski Depo., 22-23. Plaintiffs contend that Peplowski's answers at the deposition gave them "no choice but to suspend the deposition." Motion to Amend, 12. Plaintiffs' counsel then warned Peplowski that she had given false testimony under oath and that "[w]e are going to have to—we'll have to bring an appropriate motion with the court . . . ." Peplowski Depo, 38. Oddly enough, however, Plaintiffs did not bring any of this to the attention of the Court until almost a month *after* the Court had granted summary judgment. Plaintiffs obviously knew they could have filed a motion at that time, but failed to do so until they learned they had lost at summary judgment.

Nonetheless, Plaintiffs next argue that Peplowski had a "crisis of conscience" following her testimony, and that she contacted Dr. Lauren Papa ("Papa"), a former colleague at Zenith. Papa has provided a declaration that Peplowski had told her that she had met with Plaintiffs weeks earlier and that she had nonetheless testified at her deposition that that meeting had not occurred. Declaration of Dr. Lauren Papa ("Papa Decl."), ¶¶ 4-5. Papa believed that Peplowski was concerned that Zenith would retaliate against her if she was honest. *Id.* Papa's declaration is dated March 11, 2011, and Plaintiffs argue that it is the "new evidence" that justifies granting the extraordinary relief of reversing a summary judgment Order and reopening a closed case.

### B. Failure to Raise Earlier

As described above, Plaintiffs must show that their evidence could not have been "discovered earlier through due diligence . . . ." *Dixon*, 336 F.3d at 1022 n.17. Plaintiffs argue that they could not have discovered this evidence earlier, even using reasonable diligence, because Defense counsel had pressured Peplowski to lie under oath under deposition. Motion to Amend, 17. Despite hurling such a loaded accusation at Defense counsel, Plaintiffs have provided no evidence to indicate that this happened. Instead, they merely assert that "[t]he only reason that Plaintiffs' counsel was able to definitely determine Dr. Peplowski's dishonesy (which may be attributed almost entirely to pressure from Defendants and/or Defendants' counsel, rather than Dr. Peplowski herself) is that, by sheer chance, subsequent to the deposition (but after the motion for summary judgment), Ms. Peplowski tearfully confessed lying under oath to her friend, Dr. Laura Papa, who subsequently informed Plaintiffs." Motion to Amend, 17. In other words, Plaintiffs, *without any direct evidence*, contend that Defense counsel committed misconduct and that this misconduct was the source of their failure to raise the issue of Peplowski's testimony earlier.

The Court finds this implausible. Even though Papa allegedly approached Plaintiffs subsequent to the Court's summary judgment hearing, Papa's declaration only supported what Plaintiffs already claim to have known: that Peplowski had lied in her deposition. Plaintiffs knew of Peplowski's allegedly perjured testimony weeks before the summary judgment hearing date, and could have raised the issue then. Plaintiffs note that the deposition of Peplowski occurred "coincidentally" on the date their opposition to summary judgment was due. Yet Plaintiffs certainly had a *say* in scheduling that deposition. Furthermore, Plaintiffs could have asked the Court to grant them additional time to file their Opposition, in light of the testimony. But they did not.[2]

---

[2] In their Reply in support of the Motion for Relief, Plaintiffs insist that they "did make such a request," explaining that in their Opposition to the Motion for Summary Judgment "and prior to the hearing date on that motion, Plaintiffs requested that they be granted sufficient time to further develop the factual background for their case." Reply in support of Motion for Relief, 22 (emphasis in original). This is disingenuous at best. Plaintiffs' Opposition to the Motion for Summary Judgment merely stated, in a footnote, that Plaintiffs expected that Defendants' may raise new issues in their reply brief, and

Instead, Plaintiffs, for the first time, complain in their motions that they did not have enough time to prepare for the summary judgment hearing, and did not have sufficient evidence at that time to justify raising Peplowski's testimony. They explain that, "[p]rior to obtaining the Papa Declaration, Plaintiffs were reluctant to file based solely on the Declarations of Dr. Hoffman, an interested party, and of Benjamin Fenton, counsel for Plaintiffs, regarding the December 16, 2010 meeting, in light of Dr. Peplowski's refusal to acknowledge [the meeting with Plaintiffs' counsel] in her January 17, 2011 testimony." Reply to Motion to Amend, 7. Even putting aside the fact that Plaintiffs did not display the same reluctance to rely on those declarations in their Opposition to the summary judgment motions, it is still surprising that Plaintiffs could claim that this evidence was so damning that it is the premise of the present motions but was nonetheless unworthy of bringing to the Court's attention earlier. Indeed, the Court is skeptical of the idea that Plaintiffs' uncovering of the existence of one further piece of evidence, through Papa's declaration, could change their argument from one not even worth bringing to the Court's attention to one that was "irrefutable." *See id.* at 7. Furthermore, the Court never received *any* requests to postpone the hearing, or any notice of Plaintiffs' alleged difficulties.[3] If Plaintiffs believed that this evidence was so critical to their case, they certainly would have moved for additional discovery prior to the Court's formal closure of this case–and would have done so in more than a footnote. Finally, and most importantly, the Court is not convinced that Plaintiffs could not have discovered this evidence with due diligence, since the alleged phone call between Papa and Peplowski occurred in January 2011–*prior* to the summary judgment hearing. As a result, it does not merit reopening this case. *See Dixon*, 336 F.3d at 1022; *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985).

### C. Relevance of New Evidence

Plaintiffs have failed to demonstrate that Peplowski was lying in her deposition. To start, they argue that "[s]ome of the details [Peplowski] did admit prove the meeting took place" simply because Peplowski admitted living in the area Plaintiffs claim she met with them. Motion to Amend, 11. Living near somewhere hardly suggests that a meeting there happened. Plaintiffs also try to mince her words, arguing that the fact that she answered "I don't know" and "I can't answer" rather than "no" to some questions "speaks volumes." *Id.* The Court disagrees. There are numerous reasons why a witness may not want to answer a question short of deception. Indeed, Defendants put forth evidence of Plaintiffs' counsel's "harassing nature" during the deposition, which may have contributed to the kinds of answers Peplowski offered. *See* Kass Decl. ¶¶ 8-20.

---

that, in the event that Defendants did so, Plaintiffs requested that the Court disregard such evidence and then give them time to respond. Opposition to Motion for Summary Judgment, 5, n.3. In no way do Plaintiffs make a formal request to continue the summary judgment hearing.

[3] See above footnote.

More importantly, given the basis of the Court's reasoning in its summary judgment Order, the purported new evidence would not have changed the outcome of the case, and certainly falls short of suggesting a "manifest injustice." *See School Dist. No. 1J*, 5 F.3d at 1263.[4] Thus, there exists no reasonable basis for allowing in the evidence after summary judgment has been entered.[5]

### D. Alleged Misconduct by Defense Counsel

Finally, Plaintiffs accuse Defense counsel of discovery misconduct and argue that this is grounds to reopen the case under Rule 60(b). Plaintiffs are required to prove by clear and convincing evidence that there was fraud, misrepresentation, or other misconduct. *See Jones v. Aero/Chem Corp.*, 921 F.2d 875 (9th Cir. 1990). They have fallen woefully short of doing so.

It appears that Plaintiffs are suggesting that Defense counsel forced Peplowski to lie in her deposition, but there is no such evidence of this. Furthermore, the cases cited by Plaintiffs–nearly all of which are from non-controlling jurisdictions[6]–dealt with circumstances where the allegations of discovery misconduct were egregious and involved actual evidence of defendants deliberately interfering with discovery.[7] Here, Plaintiffs have not shown that, nor have they demonstrated that they themselves exercised due diligence in uncovering any theoretical misconduct.

Plaintiffs also allege that Peplowski and Zenith were parties directly adverse to each other but that Mr. Kass represented both in the present action. They request disqualification on this basis, arguing that "[i]t is also very unlikely that there was written informed consent by all parties; and, even if Dr. Peplowski signed such a consent, it would be highly suspect and probably void as being a product

---

[4] The Court does not disregard the evidentiary concerns to the Papa declaration, raised by Defendants. Nonetheless, those concerns are mooted by the fact that the Court declines to find the new evidence admissible at this time.

[5] Nonetheless, Plaintiffs spend much of their Reply briefs attempting to reargue the merits of the summary judgment motion.

[6] Despite the fact that Plaintiffs rely almost exclusively on non-controlling case law, they nonetheless insist that "Defendants' silence with respect to these other five cases is an admission by Defendants that they lack <u>any</u> possible response thereto." Reply in Support of Motion for Relief, 11 (emphasis in original). This is an argument of desperation. Defendants are certainly not required to distinguish non-controlling case law.

[7] For example, in a Louisiana case cited by Plaintiffs, the defendant was found to have provided false testimony and a defense *expert* witness lied under oath. *See* Motion to Amend, 21. This differs dramatically from the accusations Plaintiffs make here.

of undue influence by Defendants' counsel, exerting economic and other pressure on Dr. Peplowski." Motion to Amend, 23. This statement speaks volumes about Plaintiffs' approach to their current motions; they speculate, provide minimal evidence, yet make allegations that carry the power to tarnish Defendants counsel's reputations.

Regardless, these allegations could have been raised earlier, as Plaintiffs certainly had notice of them prior to the summary judgment hearing, as they all stemmed from the deposition of Peplowski in January. Plaintiffs' allegations of misconduct appear to be nothing more than a last-ditch attempt by Plaintiffs to circumvent the Court's Order and reopen the case.

### E. Sanctions for Plaintiffs

Defendants' request sanctions against Plaintiffs for the filing of these motions. The Court declines to exercise its discretion to award sanctions or fees.

### IV. Disposition

For the reasons stated above, the Court DENIES Plaintiffs' Motion to Alter or Amend the Judgment (Dockets 43 and 47) and DENIES Plaintiffs' Motion for Relief from Judgment (Docket 62).

Defendants' request for attorney fees and costs pursuant to these motions is also DENIED.

The Clerk shall serve this minute order on all parties to the action.